IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Magistrate Judge Craig B. Shaffer

Civil Action No. 14-cv-00238-CBS

PHILLIP GREGORY DURAN,

        Plaintiff,

v.

CAROLYN W. COLVIN,

        Defendant.

---

## MEMORANDUM OPINION AND ORDER

---

Magistrate Judge Shaffer

      This action comes before the court pursuant to Titles II and XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 401-33 and 1381-83(c) for review of the Commissioner of Social Security's final decision denying Phillip Gregory Duran's ("Plaintiff") application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI").  Pursuant to the Order of Reference dated January 8, 2015, this civil action was referred to the Magistrate Judge "for all purposes" pursuant to the Pilot Program to Implement the Direct Assignment of Civil Cases to Full Time Magistrate Judges and Title 28 U.S.C. § 636(c).  (*See* Doc. No. 20).  The court has carefully considered the Complaint (filed January 28, 2014) (Doc. No. 1), Defendant's Answer (filed July 14, 2014) (Doc. No. 9), Plaintiff's Opening Brief (filed September 15, 2014) (Doc. No. 13), Defendant's Response Brief (filed November 25, 2014) (Doc. No. 16), the entire case file, the administrative record, and applicable case law.  For the following reasons, the court affirms the Commissioner's decision.

## BACKGROUND

In November 2010, Plaintiff filed an application for disability benefits, alleging a disability onset date of March 27, 2009. (*See* Social Security Administrative Record (hereinafter "AR") at 314, 321).   Plaintiff alleged that his ability to work was limited by a hearing impairment, arthritis, and back problems. *See Id*. at 361. Plaintiff was born on July 6, 1962, and was 46 years old on the date of his alleged disability onset. *Id*. at 175, 321. He dropped out of high school in the 12th grade and has worked in a variety of jobs including as a bus cleaner, building maintenance laborer, plating equipment tender, lead fabricator, bindery worker, and machine feeder. *Id*. at 183-84, 186-193. In addition, Plaintiff was incarcerated for 19 months because he collected unemployment benefits while he was working. *Id* at 185. After his initial application was denied, Plaintiff requested a hearing, which was held on May 9, 2012, before an Administrative Law Judge ("ALJ"). *See Id*. at 178-217, 252-53.

Plaintiff was represented by counsel at the hearing and testified that he suffered from hearing loss, but that his hearing difficulty could be alleviated with the use of hearing aids. *Id*. at 193-94.  He also testified that he suffered from back pain that prevented him from getting out of bed for several days at a time. *Id*. at 194-95. But when asked to rate his pain on a scale from one to ten, Plaintiff stated that his pain was a five or five and a half. *Id*. at 195. Plaintiff stated that the most he could lift was five to ten pounds. *Id*. at 197. Plaintiff also testified that he could walk five miles, but could only stand for 15 to 20 minutes at a time. *Id*. at 197-98.

A vocational expert ("VE") also testified at the hearing. *Id*. at 207-216. The VE testified that Plaintiff's prior work experience was classified as ranging from "light" to "heavy" by the Dictionary of Occupational Titles exertional guidelines. *Id*. at 209-10. The ALJ asked the VE to assume hypothetically that an individual of Plaintiff's age — with the same education and past

work experience as Plaintiff — had the following limitations: (1) lift up to 20 pounds occasionally, 10 pounds frequently; (2) sit, stand, and walk for approximately two hours per occasion; (3) pushing and pulling are within the lift/carry limits; (4) occasionally operate foot controls; (5) never climb ladders or scaffolding; (6) should not work with or near open dangerous machinery, at unprotected heights, or where driving is a requirement of the job; (7) occasionally climb ramps or stairs; (8) occasionally stoop, crouch, crawl; and (9) frequently balance and kneel. *Id*. at 210-11. The ALJ also told the VE to assume that the individual had bilateral hearing loss and, therefore, that occupations where hearing loss would cause a danger to the individual or others should be avoided. *Id*. at 211. Finally, the ALJ told the VE to assume that face-to-face communication was required, as opposed to the use of a telephone. *Id*.  The VE testified that an individual with those limitations could not perform the work involved in Plaintiff's previous jobs. *Id*.

However, the VE identified three other "light" exertional jobs that someone with those limitations could perform and testified about the number of each position in the regional and national economy: (1) routing clerk (1,100 Colorado; 83,000 National); (2) office helper (900 Colorado; 90,000 National); and (3) mailroom clerk (400 Colorado; 40,000 National).  *Id*. at 211-12.  The ALJ then posed a second hypothetical in which he asked the VE to assume that instead of being able to lift and carry 10 pounds occasionally, the individual could lift and carry less than 10 pounds frequently. *Id*. at 212. The VE testified that, under these conditions, all of the previously identified jobs would be eliminated. *Id*.

The VE did testify, however, that a person under those conditions could function as a document preparer (200 Colorado; 20,000 National); an addressing clerk (Colorado 200; National 20,000); a pneumatic tube operator (Colorado 100; National 10,000); or a cutter and

paster (Colorado 150; National 15,000). The ALJ then asked the VE to assume that — instead of being able to sit, stand, walk for two hours per occasion — the individual could (1) stand for 20 minutes per occasion, 3 hours per day; (2) walk 30 minutes per occasion, 4 hours per day; and sit 45 minutes per occasion, 4 hours per day. *Id*. at 213-1. The VE testified that there was no compatible employment within those limitations. *Id*.

Plaintiff's counsel then asked the VE to assume that the individual from the first and second hypotheticals could only finger and handle occasionally with the non-dominant hand. *Id*. at 214-15. The VE testified that under those circumstances, the three previously identified jobs would be eliminated. *Id*. at 215.

On May 23, 2012, the ALJ issued his decision denying benefits. *Id*. at 163-77. The ALJ's opinion followed the five-step process outlined in the Social Security regulations.[1] At step one, the ALJ found that Plaintiff had not engaged in substantial gainful employment since March 27, 2009. *Id*. at 168. At step two, the ALJ found that Plaintiff suffered from the following severe impairments: degenerative disk disease and disk herniation of the lumbar spine, hearing loss, and alcohol abuse. *Id*. At step three, the ALJ found that Plaintiff did not have an impairment that met or medically equaled a listed impairment. *Id*. at 169.

The ALJ then assessed the following residual functional capacity ("RFC"):

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except that he can lift and carry 20 pounds occasionally

---

[1] The five-step process requires the ALJ to consider whether a claimant: (1) engaged in substantial gainful activity during the alleged period of disability; (2) had a severe impairment; (3) had a condition which met or equaled the severity of a listed impairment; (4) could return to past relevant work; and, if not (5) could perform other work in the national economy. *See* 20 C.F.R. § 404.1520(a)(4), 416.920(a)(4); 20 C.F.R. §§ 404.1520 and 416.920; *Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988). After step three, the ALJ is required to assess the claimant's functional residual capacity. 20 C.F.R. § 404.1520(e). The claimant has the burden of proof in steps one through four. The Social Security Administration bears the burden of proof at step five. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

and 10 pounds frequently, push and pull within his lifting and carrying limits, sit for 2 hours at a time and for at least 6 hours in an 8 hour day, stand for 2 hours at a time and for at least 6 hours in an 8 hour day, walk for 2 hours at a time for at least 6 hours in an 8 hour day, requires regular breaks, occasionally use the right and left foot for operating foot controls, occasionally climb ramps and stairs, occasionally stoop, crouch and crawl, occasionally perform twisting actions with lifting, where "twisting" is defined as movement of the trunk at the waist level to the right and/or left, frequently balance and kneel, never climb ladders or scaffolds, never work around open machinery, at heights or drive as a job requirement and must avoid concentrated exposure to extreme cold. The claimant has bilateral hearing loss and can tolerate moderate noise not to exceed a level of 3, must avoid occupations where hearing loss would cause a danger either to the claimant or others, and requires face to face communication rather than the use of a telephone to communicate in the workplace.

*Id*. at 169-70. In fashioning Plaintiff's RFC, the ALJ discussed much of the medical evidence in Plaintiff's medical records. The ALJ noted many of Plaintiff's medical records were inconsistent with his claims regarding the disabling nature of his impairments. *Id*. at 172-74.  In addition, the ALJ credited the opinion of Dr. Frank Wright, a consultative examiner, who examined Plaintiff and provided opinions regarding Plaintiff's limitations.[2] *Id*. at 35. Dr. Wright concluded that Plaintiff could sit, stand, walk, squat, and crawl without restriction. *Id*. at 451. In addition, Dr. Wright concluded that Plaintiff could lift up to 30 pounds, and carry up to 20 pounds. *Id*. The ALJ reduced Dr. Wright's functional assessment based upon subsequent medical evidence that was not available to Dr. Wright. *Id*. The ALJ also found Plaintiff's statements regarding the intensity, persistence, and limiting effects of his symptoms "not credible" to the extent that they were inconsistent with the RFC. *Id*. at 172.

At step four, based on the RFC set forth above, the ALJ found that Plaintiff could not perform any past relevant work. *Id*. at 174-75. At step five, the ALJ found: "[c]onsidering the

---

[2]   The ALJ found no objective support for Dr. Wright's conclusion that Plaintiff could bend no more than 3 to 5 times per hour and, therefore, rejected that limitation. *Id*. at 173. However, the ALJ found the remainder of Dr. Wright's conclusions to be supported. *Id*.

claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform." *Id*. at 175. Specifically, the ALJ found that Plaintiff could work as a routing clerk, an office helper, or a mailroom clerk. *Id*. at 176. Because there were a significant number of jobs that Plaintiff could perform, the ALJ found that Plaintiff did not meet the definition of "disabled" for purposes of the Social Security Act. *Id*. Accordingly, Plaintiff's application for disability benefits was denied.

Following the ALJ's decision, Plaintiff requested review of the ALJ's decision. *Id*. at 161, 406-11. The Appeals Council denied his request for review on November 27, 2013. *Id*. at 1-4. The decision of the ALJ then became the final decision of the Commissioner. 20 C.F.R. § 404.981; *Nelson v. Sullivan*, 992 F.2d 1118, 1119 (10th Cir. 1993) (citation omitted). Plaintiff filed this action on January 28, 2014. The court has jurisdiction to review the final decision of the Commissioner. 42 U.S.C. § 405(g).

## STANDARD OF REVIEW

In reviewing the Commissioner's final decision, the court is limited to determining whether the decision adheres to applicable legal standards and is supported by substantial evidence in the record as a whole. *Berna v. Chater*, 101 F.3d 631, 632 (10th Cir. 1996) (citation omitted); *Angel v. Barnhart,* 329 F.3d 1208, 1209 (10th Cir. 2003). The court may not reverse an ALJ simply because it may have reached a different result based on the record; the question instead is whether there is substantial evidence showing that the ALJ was justified in his decision. *See Ellison v. Sullivan,* 929 F.2d 534, 536 (10th Cir. 1990). "Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Flaherty v. Astrue,* 515 F.3d 1067, 1070 (10th Cir. 2007) (internal citation omitted). Moreover, "[e]vidence is not substantial if it is overwhelmed by other

evidence in the record or constitutes mere conclusion." *Musgrave v. Sullivan,* 966 F.2d 1371, 1374 (10th Cir. 1992) (internal citation omitted).  The court will not "reweigh the evidence or retry the case," but must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Flaherty,* 515 F.3d at 1070 (internal citation omitted).  Nevertheless, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence." *Thompson v. Sullivan,* 987 F.2d 1482, 1487 (10th Cir. 1993) (internal citation omitted).

## ANALYSIS

On appeal, Plaintiff argues that the ALJ erred in the following ways: (1) the ALJ failed to properly develop the record; (2) the ALJ erred in his consideration of the medical evidence; (3) the ALJ failed to support his credibility determination with sufficient findings of fact; and (4) the conclusion that Plaintiff is capable of performing other jobs in significant numbers is not supported by substantial evidence. These arguments are not persuasive.

## A.      Duty to Develop the Record

Plaintiff asserts that the ALJ erred in failing to further develop the record. (*See* Doc. 13 at 14-17). The court disagrees. The record contains ample treatment records relating to Plaintiff's health as well as a thorough consultative examination, and these records sufficiently explore Plaintiff's conditions. Although the nonadversarial nature of social security proceedings "imposes a duty on the ALJ 'to ensure that an adequate record is developed . . . consistent with the issues raise,'" the ALJ met that duty here. *See Jimenez v. Astrue*, 385 F. App'x 785, 788 (10th Cir. 2010) (quoting *Flaherty v. Astrue*, 515 F.3d 1067, 1071 (10th Cir. 2007)). Furthermore, in cases such as this one, where Plaintiff was represented by an attorney at the

disability hearing, "the ALJ should ordinarily be entitled to rely on the claimant's counsel to structure and present claimant's case in a way that the claimant's claims are adequately explored," and the ALJ "may ordinarily require counsel to identify the issue or issues requiring further development." *Hawkins v. Chater*, 113 F.3d 1162, 1167 (10th Cir. 1997). At the hearing in this case, Plaintiff's counsel made no indication that further development of the record was necessary to decide the matter. (*See* AR at 182-83).

On appeal, Plaintiff argues that Dr. Wright's functional capacity evaluation — prepared in February 2011 — was completed without the benefit of an MRI taken in July 2011. However, the ALJ specifically accounted for this MRI in Plaintiff's favor. Indeed, he noted that the MRI supported Plaintiff's claims of back pain, and reduced Plaintiff's functional capacities accordingly. (AR at 174). Thus, the court is not persuaded that the July 2011 MRI necessitated further investigation in the form of a new functional capacity evaluation. *See Diaz v. Sec'y of Health & Human Servs.*, 898 F.2d 774, 778 (10th Cir. 1990) (refusing to remand for a consultative examination where the plaintiff had produced no objective evidence that he suffered from depression). Further, Plaintiff has not identified any other objective evidence in the record suggesting that his back impairment required further medical inquiry. *Hawkins*, 113 F.3d at 1167.

Plaintiff also contends that the ALJ failed to adequately develop the record with regard to his hearing impairments. The court perceives no error.[3] Here, the record does, in fact, contain

---

[3] In addition, Plaintiff admitted, both in his medical records (AR at 444) and during the administrative hearing (AR 193-94), that his hearing impairment could be fully addressed with hearing aids. "If an impairment can reasonably be treated or controlled it cannot constitute a disability." *Limon v. Shalala*, 884 F.Supp. 1481, 1487 (D. Colo. 1995) (citing *Johnson v. Bowen*, 864 F.2d 340, 348 (5th Cir. 1988)); *see also Dixon v. Heckler*, 811 F.2d 506, 508 (10th Cir. 1987) (finding a condition that can be controlled with medication cannot serve as the basis for a finding of a disability). Plaintiff testified that his parole officer was attempting to help Plaintiff obtain his hearing aids. Thus, the court is not entirely

treatment records pertaining to Plaintiff's hearing, and those records sufficiently explored his condition and supported the ALJ's residual functional capacity. (AR at 440-46).  Thus, the ALJ fulfilled his duty with regard to ensuring that the record was adequate. *See Jimenez v. Astrue*, 385 F. App'x 785, 788 (10th Cir. 2010) (quoting *Flaherty v. Astrue*, 515 F.3d 1067, 1071 (10th Cir. 2007)).

**B.      ALJ's Consideration of Medical Evidence**

Plaintiff also argues that the ALJ erred in his assessment of the medical evidence. Plaintiff's principle argument seems to be the contention that the ALJ failed to comply with 20 C.F.R. § 404.1527. Under that regulation, "[t]reating source medical opinions are . . . entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527." *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003) (quoting SSR 96-2p). The Tenth Circuit has set forth those factors as

> (1) the length of the treatment relationship and the frequency of the examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Id*. at 1301 (internal quotation marks omitted). A treating source is a medical professional capable of providing a detailed and longitudinal picture of a claimant's medical impairments. 20 C.F.R. § 404.1527(c)(2). It is a relationship that requires both duration and frequency. *Doyal v. Barnhart*, 331 F.3d 758, 763 (10th Cir. 2003); *see also Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994) ("The treating physician doctrine is based on the assumption that a medical

---

persuaded that Plaintiff's hearing impairment constituted a condition that could have a material impact on the disability decision requiring further investigation. *Hawkins*, 113 F.3d at 1167.

professional who has dealt with a claimant and his maladies over a long period of time will have a deeper insight into the medical condition of the claimant than will a person who has examined a claimant but once, or who has only seen the claimant's medical records.").

Where, as here, none of the medical opinions at issue constitute "treating sources,"[4] the court, nevertheless, evaluates them by applying the same factors as are generally used to assess treating source opinions. Social Security Ruling 06-03p, 2006 WL 2329939 at *4 (SSA Aug. 9, 2006); 20 C.F.R. §§ 404.1527(c)(2)-(6) & 416.927(c)(2)-(6).

Here, Plaintiff seems to contend that the ALJ erred in his evaluations because he failed to explicitly address each of the aforementioned factors. (Doc. 13 at 22-24). The regulations, however, do not require the ALJ to specifically discuss all of the factors. *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007). With regard to Dr. Wright's opinion — that Plaintiff could only bend three to five times per hour — the ALJ specifically noted that this determination was inconsistent with the other evidence of record. *See* 20 C.F.R. § 404.1527(c)(4) ("Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion."). Thus, the ALJ did not err in his discussion of Dr. Wright's opinions. Indeed, Plaintiff admits that the ALJ specifically invoked this factor with regard to the other medical evidence, including Mr. Thompson's opinions. Consequently, the court cannot conclude that the ALJ failed to comply with 20 C.F.R. § 404.1527.

Plaintiff also argues that the ALJ committed reversible error because he misunderstood Mr. Thompson's credentials. Although the court acknowledges that the ALJ referred to Mr. Thompson as a doctor, as opposed to a physician's assistant, the court cannot agree that this error warrants remand. The ALJ did not erroneously accord Mr. Thompson's opinions any special or

---

[4] Dr. Wright provided a one-time consultative examination. Mr. Thompson is a physician's assistant, not a doctor. 20 C.F.R. § 404.1513(a). (defining — for the purposes of this case — "acceptable medical sources" as licensed physicians and licensed or certified psychologists).

controlling weight. Instead, the ALJ evaluated Mr. Thompson's opinions in conjunction with the other medical evidence, as he was required to do. Rather, Plaintiff's arguments regarding the ALJ's discussion of Mr. Thompson's opinions appear to be little more than a thinly veiled request for this court to reweigh the evidence, which it cannot do. *Oldham*, 509 F.3d at 1257. This court may review only the sufficiency of the evidence; and in this case, there was enough evidence to support the ALJ's findings. Even if "the evidence may have also supported contrary findings, '[the court] may not displace the agency's choice between two fairly conflicting views, even though the court would justifiably have made a difference choice had the matter been before it de novo.'" *Id.* (quoting *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007)).[5]

## C.     Evaluation of Plaintiff's Credibility

As to Plaintiff's complaints of frequent pain, the ALJ found that "the claimant's statements concerning the intensity, persistence and limiting effects of [his] symptoms [were] not credible" to the extent that they were inconsistent with the RFC. (AR at 172). Plaintiff contends that the ALJ failed to support this conclusion with sufficient findings of fact. This argument must fail.

"'To be disabling, pain must be so severe, by itself or in conjunction with other impairments, as to preclude any substantial gainful employment.'" *Brown v. Bowen*, 801 F.2d 361, 362-63 (10th Cir. 1986) (quoting *Dumas v. Schweiker*, 712 F.2d 1545, 1552 (2d Cir. 1983)). Subjective complaints of pain alone are insufficient to establish a disability. *Talley v. Sullivan*, 908 F.2d 585, 587 (10th Cir. 1990) (internal citations omitted). To determine whether pain is

---

[5] In passing, Plaintiff again argues that the ALJ dismissed the MRI evidence. (Doc. 13 at 23). Although he does not specify which MRI, the court presumes he is referring to the July 2011 MRI. As the court previously noted, the ALJ did not dismiss this MRI; rather, he specifically accounted for it in Plaintiff's favor. To the extent that Plaintiff is attempting to make a different argument with regard to the July 2011 MRI, the argument is bare and undeveloped. Thus, the court will not address it any further. *See Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012) ("We will consider and discuss only those of [plaintiff's] contentions that have been adequately briefed for our review.").

disabling, the ALJ is entitled to examine the medical record and evaluate a claimant's credibility. The ALJ normally determines the weight and credibility of testimony, and these determinations are generally considered binding on the reviewing court. *See White v. Barnhart*, 287 F.3d 903, 909 (10th Cir. 2001). The ALJ's credibility determination, however, must be supported by specific evidence. *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000) (discussing *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995)).

In this case, the ALJ considered the entire record and concluded that Plaintiff's complaints regarding the severity of his symptoms were not entirely credible. (AR at 172). In reaching this conclusion, the ALJ noted that Plaintiff described daily activities that were "markedly inconsistent" with his allegations of disabling back pain. *Id*. Indeed, Plaintiff told Dr. Wright that he sweeps, washes dishes, does laundry, and goes to the grocery store without assistance. *Id*. at 448. He also told Dr. Wright that he cooks, dresses himself, and bathes without assistance. *Id*.  On May 3, 2012, Plaintiff told Mr. Thompson that he had walked 3-4 miles without needing to stop. *Id*. at 513. In addition, Plaintiff testified that the day prior to the hearing he had not been able to get out of bed all day due to the pain; but he also testified, inconsistently, that he had walked one mile. *Id*. at 195, 199-201.

Further, the ALJ noted the incongruity between Plaintiff's subjective complaints of pain and his medical examinations. For example, during the consultative examination on February 7, 2011, Plaintiff complained of back pain; however, the physical exam demonstrated that Plaintiff could bend left and right, as well as turn left and right, without any significant pain. *Id*. at 450. Plaintiff also had full range of motion in his hips and was able to stand on his toes and heels without an assistive device. *Id*. In addition, Plaintiff had 4/4 and 5/5 strength in all of his muscle groups, and he could bend and squat without restriction. *Id*. at 451.

Similarly, on March 3, 2012, Plaintiff reported pain in his lower back. *Id*. at 513. But the physical exam showed that Plaintiff had full lumbar range of motion with minimal complaints of pain. *Id*. at 514. He was also able to walk on his heels and toes without weakness. *Id*. Further, although an x-ray revealed some degenerative changes, Mr. Thompson noted that Plaintiff had generally good disk space and good lordosis. *Id*. Mr. Thompson did not prescribe Plaintiff any pain medication, and instead recommended exercise and pool therapy. *Id*.

Plaintiff again relies heavily on the July 2011 MRI, and contends that the ALJ ignored this evidence in evaluating his subjective complaints of pain. (Doc. 13 at 25). As previously noted, however, the ALJ considered all of the evidence and specifically discussed the July 2011 MRI as favorable to Plaintiff. (AR at 173-74). That the ALJ did not accord the MRI with as much weight as Plaintiff wishes does not amount to error. Plaintiff's arguments to the contrary are simply a request for this court to reweigh the evidence in his favor. The court may not do so, *Salazar v. Barnhart*, 468 F.3d 615, 621 (10th Cir. 2006), and, therefore, concludes that the ALJ's RFC assessment regarding Plaintiff's credibility was sufficiently supported by substantial evidence.

**D.      Sufficient Jobs in the National Economy that Plaintiff can Perform**

At step five, the ALJ must consider vocational factors (the claimant's age, education, and past work experience) and determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. *Thompson v. Astrue*, 987 F.2d 1482, 1487 (10th Cir. 1993).  Here, the ALJ found that "there are jobs that exist in significant numbers in the national economy that the claimant can perform." (AR at 175). Specifically, the ALJ found that Plaintiff could work as a routing clerk, an office helper, or a mail room clerk. *Id*. at 176.

Plaintiff argues that he could not perform these jobs because they are inconsistent with his hearing limitations.[6] The court is not persuaded.

During his examination of the VE, the ALJ specifically asked the VE to assume a person who had bilateral hearing loss and, therefore, would need to avoid occupations where hearing loss would cause a danger to the individual or others. The ALJ asked the VE to further assume that the individual would require face-to-face contact as opposed to telephone interactions. (AR at 211). The VE testified that the occupations of routing clerk, officer helper, and mail room clerk satisfied those requirements. The ALJ then specifically inquired as to whether any of those occupations had specific hearing requirements. *Id*. at 212. The VE testified that they did not. *Id*.

On appeal, the court notes that the occupations of mail clerk and office helper do, in fact, require "occasional" hearing. *See* DOT 239.567-010, 1991 WL 672232 (office helper); DOT 209.687-026, 1991 WL 671813 (mail clerk). Assuming *arguendo* that the ALJ erred in concluding that Plaintiff could perform these two jobs, the fact remains that one of the jobs (routing clerk) identified by the VE, and relied on by the ALJ in his step five determination, had no hearing requirement. *See* DOT 222.687-022, 1991 WL 672133. The VE testified that there were 83,000 of these jobs available nationally. *Id*. at 211. The Tenth Circuit has made clear that "the controlling statutes, federal regulations, and case law all indicate that the proper focus generally must be on jobs in the national, not regional, economy." *Raymond v. Astrue*, 621 F.3d 1269, 1274 (10th Cir. 2009). Plaintiff does not argue that the number of these jobs available

---

[6] Plaintiff also contends that he is unable to perform these jobs due to limitations in his ability to read and write quickly. (Doc. 13 at 27). Other than the fact that Plaintiff dropped out of high school, and had a friend complete his adult function report for him, there is simply no evidence to support Plaintiff's claims regarding such limitations. Nor did Plaintiff ever raise this as a substantive issue impacting his ability to work. *See Trident Seafoods, Inc. v. Nat'l Labor Relations Board*, 101 F.3d 111, 116 (D.C. Cir. 1996) ("when one party utterly fails to raise a significant issue before the ALJ, [the] record developed with regard to that issue will usually be inadequate to support substantive finding in its favor and, generally speaking, neither ALJ nor agency should consider such an issue"). In addition, Plaintiff has failed to provide a compelling reason for this court to consider this argument on appeal.

nationally — either alone or combined with those available in Colorado (1,100) — does not constitute a significant number, nor would such an argument have merit. Therefore, the court concludes that the ALJ did not err in his step five determination.

## CONCLUSION

The court is satisfied that the ALJ considered all relevant facts and that the record contains substantial evidence from which the Commissioner could properly conclude under the law and regulations that Mr. Duran was not disabled within the meaning of Titles II and XVI of the Social Security Act and, therefore, not eligible to receive Disability Insurance Benefits or Supplemental Security Income benefits. Accordingly, IT IS ORDERED that the Commissioner's final decision is AFFIRMED and this civil action is DISMISSED, with each party to bear his own fees and costs.

DATED at Denver, Colorado, this 22nd day of December, 2015.

BY THE COURT:

s/Craig B. Shaffer
United States Magistrate Judge